IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

JASON CAMPBELL,

              Defendant.

CRIMINAL ACTION
NO. 23-141

## OPINION

**Slomsky, J.**                                             **May 10, 2024**

## I.    INTRODUCTION

Defendant Jason Campbell is charged in a two count Indictment with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1)[1] and possession with intent to distribute marijuana for remuneration, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D). (Doc. No. 1.) On September 22, 2023, Defendant filed a Motion to Dismiss the Indictment for Failure to State an Offense (the "Motion"). (Doc. No. 22.) In the Motion, Defendant asserts that 18 U.S.C. § 922(g)(1) is (1) facially unconstitutional, and (2) unconstitutional as applied to him. (See Doc. No. 22-1.) Specifically, Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional as applied

---

[1] 18 U.S.C. § 922(g)(1) provides:

> (g) It shall be unlawful for any person—

> (1) who has been convicted in any court of, a crime punishable by imprisonment
> for a term exceeding one year…

> to ship or transport in interstate or foreign commerce, or possess in or affecting
> commerce, any firearm or ammunition; or to receive any firearm or ammunition
> which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

to him as a result of the United States Supreme Court decision in <u>New York Rifle Association, Inc. v. Bruen</u>, 142 S. Ct. 2111 (2022) and the Third Circuit decision in <u>Range v. Attorney General</u>, 69 F.4th 96 (3d Cir. 2023).[2]  (Doc. No. 22 at 1.)

To the contrary, the Government submits that 18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant for three reasons.  (Doc. No. 23.)  First, Defendant did not possess firearms for a lawful purpose.  (<u>Id.</u> at 10.)  Second, Defendant was on parole at the time of the charged conduct, and the Government argues that it may restrict Defendant's firearm possession as a result. (<u>Id.</u> at 12.)  Third, the Government argues that the restriction on Defendant's firearm possession is consistent with historical practice because Defendant is a dangerous felon who was convicted of multiple violent crimes, such as murder, robbery, carjacking, and assault.  (<u>Id.</u> at 19.)

Additionally, the Government argues that Defendant's facial challenge fails because Defendant has not shown that "no set of circumstances exists under which [18 U.S.C. § 922(g)(1)] would be valid."  (<u>Id.</u> at 22) (citing <u>United States v. Mitchell</u>, 652 F.3d 387, 405 (3d Cir. 2011)). For the reasons <u>infra</u>, Defendant's Motion will be denied.

---

[2] In <u>Bruen</u>, the United States Supreme Court set forth a two-step inquiry to determine whether a firearm regulation violates the Second Amendment to the United States Constitution.  <u>See</u> <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 597 U.S. 1, 17 (2022).  First, the court must determine whether the plain text of the Second Amendment covers the individual's conduct.  <u>See</u> <u>id.</u>  If it does, then "the Constitution presumptively protects that conduct."  <u>Id.</u>  Second, the burden shifts to the Government to rebut the presumption of constitutionality by "justify[ing] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." <u>Id.</u>

In <u>Range</u>, the Third Circuit Court of Appeals applied the two-step <u>Bruen</u> inquiry and held that due to the nature of the defendant's prior conviction for making a false statement to obtain food stamps, the Government failed to show that depriving the defendant of his Second Amendment right to possess a firearm was consistent with the Nation's historical tradition of firearm regulation.  69 F.4th 96, 105-106 (3d Cir. 2023) (<u>en</u> <u>banc</u>).

## II.     BACKGROUND

### A.  Defendant's Prior Convictions

#### 1.   July 1999 Arrest

Prior to his charged offense, Defendant had multiple convictions for violent crimes.  (Doc. No. 23 at 3-4.)  On July 25, 1999, Defendant was arrested for robbery, carjacking, aggravated assault, and violations of the Pennsylvania Uniform Firearms Act.  (See id.)  Following this arrest, Defendant was convicted by a jury in the Philadelphia Court of Common Pleas of (1) robbery, in violation of 18 Pa. Cons. Stat. § 3701, (2) carjacking, in violation of 18 Pa. Cons. Stat. § 3702, (3) conspiracy, in violation of Pa. Cons. Stat. § 903 and (4) fleeing police, in violation of 75 Pa. Cons. Stat. § 3733.  (See id.)  On February 5, 2001, Defendant received a total sentence of five (5) to ten (10) years imprisonment for these convictions.  (See id.)

#### 2.   December 1999 Arrest

In addition, on December 25, 1999, Defendant was arrested for murder, robbery, and firearms offenses.  (Id. at 4.)  On July 25, 2001, Defendant pled guilty to (1) third degree murder, in violation of 18 Pa. Cons. Stat. § 2502, and (2) carrying a firearm in public, in violation of 18 Pa. Cons. Stat. § 6106.  (See id.)  Subsequently, Defendant was sentenced to a term of ten (10) to twenty (20) years imprisonment and ten (10) years' probation.  (See id.)  In this same case, Defendant pled guilty to aggravated assault and was sentenced to twenty (20) years' probation to run consecutively with the sentence imposed for third degree murder and carrying a firearm in public.  (See id.)

#### 3.   2012 Arrest

In 2012, during his incarceration in State Correctional Institution Houtzdale ("SCI Houtzdale"), Defendant was arrested for (1) terroristic threats, in violation of 18 Pa. Cons. Stat. § 2706, (2) introducing a weapon that may be used to escape, in violation of 18 Pa. Cons. Stat. §

5102, and (3) contraband-possession of a telecom device by an inmate, in violation of 18 Pa. Cons. Stat. § 5123.  (See id.)   On February 11, 2013, in the Clearfield County Court of Common Pleas, Defendant pled guilty to all three charges and was sentenced to a term of imprisonment of two (2) to four (4) years.  (See id.)

### B.  The Instant Offense

On January 24, 2023, Defendant participated in a video call with an incarcerated individual. During this call, which was recorded by the Bureau of Prisons ("BOP"), Defendant was seen in possession of multiple firearms.  (See Doc. Nos. 30 at 2; 43.)  Defendant was on parole at the time of the call.  (See id. at 4.)  Under his parole conditions, he was prohibited from possessing firearms. (See id. at 2, 12.)

Based upon the recorded video call, a Special Agent with the Pennsylvania Office of the Attorney General obtained a search warrant for the Greene Street residence where Defendant was residing at the time of the call.  (See id. at 2-3.)  On January 27, 2023, Officers of the Philadelphia Police Department executed the search warrant at the residence on Greene Street.  (See id.)  Seven firearms were recovered from the residence.[3]  (See id. at 3.)  Defendant was subsequently arrested.

On April 5, 2023, Defendant was charged in a two-count indictment with (1) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and (2) possession with intent to

---

[3] While seven firearms were recovered from the residence, Defendant was only charged with possessing six of the seven firearms recovered, as set forth infra.  (See Doc. No. 30 at 6.)  In addition, search warrants were also obtained for 1) a black Chevy Tahoe owned by Defendant, and 2) a blue Dodge Ram viewed in the recorded video call.  (See id. at 1-6.)  Officers searched the Blue Dodge Ram and recovered approximately 454 grams of marijuana.  (See id.)

distribute marijuana for remuneration, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D).  (Doc. No.

1.)  The Indictment stated that Defendant possessed the following firearms:[4]

1.   A Taurus, model PT709, 9mm semi-automatic pistol, bearing serial number TDR38243;

2.   A Hi-Point, model JHP, .45ACP caliber semi-automatic pistol, bearing serial number 4180471;

3.   A Taurus, model G2S, 9mm semi-automatic pistol, with an obliterated serial number, loaded with six (6) live rounds of ammunition;

4.   A Glock, model 23 Gen 5, .40 caliber semi-automatic pistol, with an obliterated serial number;

5.   A Walther, model PPQ, 9mm semi-automatic pistol, with an obliterated serial number;

6.   A Taurus, model G2C, .40 caliber semi-automatic pistol, with an obliterated serial number.

(Id. at 1-2.)

## III.   STANDARD OF REVIEW

The Second Amendment to the United States Constitution provides that "the right of the

people to keep and bear Arms, shall not be infringed."  U.S. CONST. AMEND. II.  However, "[l]ike

most rights, the right [to bear arms] secured by the Second Amendment is not unlimited."  District

of Columbia v. Heller, 554 U.S. 570, 626 (2008).  As the Supreme Court in Heller explained:

From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.  Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such

---

[4] As noted above, Defendant was only charged with possessing six of the seven firearms recovered from the Greene Street Residence.  (See Doc. No. 30 at 6.)

5

as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. (citations omitted).

In New York State Rifle & Pistol Association, Inc. v. Bruen, the Supreme Court established a framework for determining whether a firearm regulation violates the Second Amendment. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2129-30 (2022). Under Bruen, courts must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. Id. at 2129. If so, "the Constitution presumptively protects that conduct" and the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-stablished and representative historical analogue, not a historical twin.'" Range, 69 F.4th at 103 (quoting Bruen, 142 S. Ct. at 2133). Only if the Government meets this burden may a court conclude that the individual's conduct falls outside the Second Amendment's protection. Bruen, 142 S. Ct. at 2129.

In Range v. Attorney General, the Third Circuit considered a civil action brought by Bryan Range who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him. Range, 69 F.4th at 98. Range had pled guilty to one count of making a false statement to obtain food stamps in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that precluded Range from possessing a firearm under 18 U.S.C. § 922(g)(1). Id. In Range, the Third Circuit held that, due to the nature of this prior conviction, the Government did not show that the Nation's historical tradition of firearm regulation supported depriving Range of his Second Amendment right to possess a firearm. Id. at 106.

**IV.     ANALYSIS**

**A.  Defendant's As-Applied Challenge**

Here, Defendant contends that in accordance with the Supreme Court's decision in <u>Bruen</u> and the Third Circuit's decision in <u>Range</u>, § 922(g)(1) is unconstitutional as applied to him.  (<u>See</u> Doc. No. 22-1 at 14.)  Defendant argues that, as in <u>Range</u>, the Government cannot meet its burden to show that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation as applied to him.  (<u>See</u> <u>id.</u> at 11-16.)

In response, the Government submits that 18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant for three primary reasons: (1) Defendant did not possess firearms for a lawful purpose; (2) Defendant was barred from possession of a firearm while on parole; and (3) the prohibition on firearm possession for a felon is constitutionally permissible based on history and tradition under <u>Bruen</u> and <u>Range</u>.  (<u>See</u> Doc. No. 23.)

As set forth above, to determine the constitutionality of firearm regulations under the Second Amendment to the United States Constitution, the Court must decide: (1) whether the text of the Second Amendment applies to Defendant and his conduct, and (2) whether the Government met its burden to demonstrate that 18 U.S.C. § 922(g)(1) is consistent with the Second Amendment's text and history.  <u>See</u> <u>Bruen</u>, 597 U.S. at 17.

As to the first prong under <u>Bruen</u>, Defendant is "one of the people" protected by the Second Amendment.[5]  The Third Circuit has held that "the people" in the Second Amendment text "refers to all Americans and not only law-abiding persons."  <u>United States v. Blackshear</u>, No. CR 23-159, 2023 WL 5985284, at *2 (E.D. Pa. Sept. 14, 2023) (citing <u>Range</u>, 69 F. 4th at 101).  Although the Government concedes that Defendant is "one of the people" protected by the Second Amendment,

---

[5]     In its Response, the Government concedes this point: "Under <u>Range</u>, the [D]efendant is one of 'the people' protected by the Second Amendment."  (Doc. No. 23 at 9.)

it argues that the Second Amendment does not extend to his conduct surrounding the firearms. (See Doc. No. 23 at 10-22.)  Thus, the Court will discuss the second prong of the Bruen framework to determine whether Defendant's conduct falls outside of the Second Amendment's protections.

As to this prong, the Court must assess whether the Government has met its burden to show that 18 U.S.C. § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. If so, Defendant's conduct falls outside the Second Amendment's protection.  Here, Defendant contends that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him because "the Government cannot carry its burden under Bruen and Range of showing a historical tradition of disarming people like him."  (Doc. No. 22-1 at 15.)  The Court disagrees.

Throughout our Nation's history, the right to bear arms has never been unlimited.  See Heller, 554 U.S. at 595.  In Heller, the Supreme Court made clear that "nothing in our opinion should cast doubt on longstanding prohibitions on the possession of firearms by felons."  Id. at 626.  In fact, "[e]ven before the Second Amendment's ratification, firearm regulation disarmed individuals who 'posed a potential danger' to society."  United States v. Green, No. CR 22-387, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023); see also Range, 69 F.4th at 122-25 (Krause, J., dissenting) (noting that historical legislatures "exercised their authority . . . to categorically disarm a group presumed, based on status, to be non-law abiding and to place the burden on individuals in that group to petition for relief and prove . . . they could be trusted to obey the law").  As the Government explains, "[c]olonial and early state legislatures likewise disarmed individuals who 'posed a potential danger' to others."  (Doc. No. 23 at 15) (quoting NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 700 F.3d 185, 200 (5th Cir. 2012)).  Further, the Government notes that "other laws disarmed individuals who had demonstrated their dangerousness by

engaging in particular types of conduct, such as carrying arms in a manner that spreads fear or terror among the people.  (Id. at 16.)

Conversely, the Supreme Court has struck down firearm regulations which hinder "law abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  Bruen, 597 U.S. at 71.  As a result, this Court "read[s] the Supreme Court's teachings in Heller and Bruen to invalidate firearms restrictions on 'law-abiding' citizens with 'ordinary self-defense needs.'"  United States v. Pearson, 2023 WL 6216527, at *2 (E.D. Pa. 2023).

Here, Defendant's firearm offenses make him different from law-abiding individuals protected under Heller and Bruen.  As noted supra, Defendant was previously convicted of robbery, carjacking, conspiracy, fleeing police, murder, and multiple firearm related offenses.  (See Doc. No. 23 at 3-4.)  Following these state court convictions, Defendant was on state parole, and thus prohibited from possessing a firearm.  (See id.)  Even as a non-custodial form of punishment, parole warrants certain losses of liberty, such as certain Second Amendment privileges, following a criminal conviction.  See Gall v. United States, 552 U.S. 38, 48 (2007).  Yet, Defendant knowingly possessed six (6) firearms at the Greene Street residence in violation of his parole terms, as noted in the Indictment.  (See Doc. No. 1.)  Further, Defendant has not shown that the firearms in his possession listed in Count One of the Indictment were kept for self-defense needs.

Defendant's case is also distinguishable from Range.  In Range, the Third Circuit held that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to appellant Bryan Range.  69 F.4th at 98.  The appellant in Range was previously convicted of making a false statement to obtain food stamps.  See id. at 105.  Pursuant to 18 U.S.C. § 922(g)(1), this conviction precluded the appellant from possessing a firearm.  See id. at 99.  The appellant's conviction was a misdemeanor under state law, and he was sentenced to three-years' probation.  Id. at 98.  Other than this conviction,

the appellant's criminal history was "limited to minor traffic and parking infractions and a summary offense for fishing without a license." Id. These convictions did not fall within the category of convictions for which there were long-standing prohibitions on the possession of firearms.

Here, Defendant's circumstances are different than those of the appellant in Range. The Third Circuit made clear that the decision in Range "is a narrow one" and "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." Id. at 106. (emphasis added). Defendant is markedly different from people like the appellant in Range. "Range pled guilty to a non-violent offense entirely unrelated to armament." Green, No. CR 22-387, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023). On the other hand, Defendant's criminal history shows repeated disobedience and disregard for the law, particularly for firearm regulations put in place to promote public welfare. For example, Defendant pled guilty to multiple firearm-related crimes prior to the instant offense, including carrying a firearm in public, in violation of 18 Pa. Cons. Stat. § 6106. And during his incarceration, he introduced a weapon that may be used to escape, in violation of 18 Pa. Cons. Stat. § 5102 which resulted in another conviction. (See Doc. No. 23 at 3-4.) Following these convictions, as the Government has shown on the video call, Defendant knowingly possessed firearms at his residence in violation of the conditions of his parole. (See id. at 2.) In sum, the narrow holding in Range "did not displace [the] presumption [that prohibitions on the possession of firearms by felons is permissible], which accords with historical tradition." Green, 2023 WL 6164407, at *2.

This Court will follow other courts in this District which have held that regulations preventing individuals like Defendant from possessing firearms are consistent with the Nation's

historical tradition of firearm regulation.  See, e.g., Green, 2023 WL 6164407, at *2 (E.D. Pa. 2023) (finding the Government met its burden in showing the Nation had a history of disarming individuals who posed a threat to society, such as the defendant who had a previous conviction for unlawful firearm possession); see also Blackshear, 2023 WL 5985284, at *2-3 (denying a constitutional challenge to 18 U.S.C. § 922(g)(1) and finding that "[t]he understanding that dangerous individuals could be disarmed" existed during the American Revolution and persisted after the ratification of the Second Amendment); United States v. Cotton, No. CR 22-471, 2023 WL 6465836, at *4 (E.D. Pa. Oct. 4, 2023) (finding that defendant's prior convictions "place[d] him within the category of those who have been disarmed consistent with the Nation's historical tradition" and that his previous conviction for unlawful possession of a firearm "demonstrates, at the very least, that he has a history of disobeying firearm regulations specifically designed to protect public safety").

In sum, "[t]o hold '§922(g)(1) unconstitutional as applied to such individuals [like Defendant] would effectively strip Congress of the ability to protect the public from a clear and present danger.'" Pearson, 2023 WL 6216527, at *3.  Accordingly, the Government has met its burden in showing that disarming individuals with a history of convictions like Defendant has comports with the Nation's traditions.  For the reasons described supra, Defendant's as-applied challenge to 18 U.S.C. § 922(g)(1) is without merit.

**B.  Defendant's Facial Challenge**

Next, Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face.  (See Doc. No. 22-1 at 4.)  The Court disagrees.

First, 18 U.S.C. § 922(g)(1) is constitutional on its face.  "[A] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'"

United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  Stated differently, to succeed on the facial challenge to § 922(g)(1), Defendant must show that 18 U.S.C. § 922(g)(1) is "unconstitutional in all of its applications."  Id.  "The fact that § 922(g)(1) might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."  Salerno, 481 U.S. at 745.

Here, Defendant has failed to meet this burden.  As discussed above, Defendant has failed to show that 18 U.S.C. § 922(g)(1) is unlawful even as applied to himself.  In addition, § 922(g)(1) has been repeatedly held as constitutional on its face.  See Pearson, 2023 WL 6216527, at *3.  It is not unconstitutional in all its applications—for example, as applied to defendants convicted of capital murder and on parole or probation.  Thus, Defendant's argument as to facial unconstitutionality is also without merit.

## V.     CONCLUSION

For these reasons, Defendant's Motion to Dismiss the Indictment (Doc. No. 22) will be denied.  An appropriate Order follows.